**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | | |
|---|---|---|
| RICHARD CARL ROWE, III, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 7:25-cv-200-WLS-ALS |
| | : | |
| Deputy Warden JAMES L. STANCIL, III, | : | |
| | : | |
| Defendant. | : | |

**ORDER**

Plaintiff Richard Carl Rowe, III, a prisoner at Jenkins Correctional Center in Millen, Georgia, filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983. (Doc. 1).[1] He also moved to proceed without prepayment of the filing fee. (Doc. 2). A review of the complaint and motion to proceed *in forma pauperis* ("IFP") reveals several shortcomings that must be corrected before the Court can determine Plaintiff's eligibility to proceed IFP and conduct the required preliminary review pursuant to 28 U.S.C. § 1915A. Therefore, if Plaintiff wishes to proceed with this action, he must file a recast complaint that complies with the instructions shown below and a motion to proceed IFP that includes a certified copy of his trust fund account statement.

**RECAST COMPLAINT**

Plaintiff asserts an access-to-courts claim against Defendant James L. Stancil, Deputy Warden of Care and Treatment at Colquitt State Prison, where Plaintiff was previously incarcerated. (Doc. 1, at 5). Plaintiff's original complaint is deficient in the following two respects: (1) his allegations regarding "actual injury" are conclusory, and (2) it is unclear how Defendant Stancil is connected to Plaintiff's access-to-courts claim.

---

[1] Plaintiff originally filed his complaint in the United States District Court for the Southern District of Georgia. (Doc. 1). On December 19, 2025, that court transferred the case to this Court. (Docs. 4, 5).

Plaintiff states that while he was incarcerated at Colquitt County Prison, he was repeatedly denied access to the law library and this denial resulted in his inability to access the courts in violation of the First and Fourteenth Amendments. (Doc. 1, at 5, 7-14). Prisoners do have a constitutional right to access the courts, which requires that they be given "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (quoting *Bounds v. Smith*, 430 U.S. 817, 825 (1977)). However, an access-to-courts claim does not encompass "an abstract, freestanding right to a law library or legal assistance[.]" *Id.* at 351. Thus, to state a plausible access-to-courts claim, a plaintiff must allege facts demonstrating an actual injury, such as a denial or dismissal, of a qualified legal action. *Id.* at 349-52; *Barbour v. Haley*, 471 F.3d 1222, 1225 (11th Cir. 2006) (citing *Lewis*, 518 U.S. at 349-50) (stating that "in order to assert a claim arising from the denial of meaningful access to the courts, an inmate must first establish an actual injury"). Qualified legal actions include nonfrivolous (a) direct criminal appeals; (b) habeas proceedings; or (c) 42 U.S.C. § 1983 cases challenging the conditions of a prisoner's confinement. *Al-Amin v. Smith*, 511 F.3d 1317, 1332 (11th Cir. 2008) (citation omitted).

While Plaintiff states that he suffered an "actual injury," (Doc. 1, at 5, 9, 11), he fails to specify what and how any nonfrivolous qualified legal action was negatively impacted due to his inability to access the law library. Instead, Plaintiff's statement of this claim in his original complaint is no more than a "[t]hreadbare recital[] of the elements" of an access-to-courts claim and, as such, it fails to state a claim upon which relief may be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must tell the Court the case name and civil or criminal action number of any nonfrivolous qualified legal action that was impeded due to his inability to access the law library and further explain exactly how the action was impeded or negatively impacted.

It appears that Plaintiff may have named James L. Stancil as a Defendant solely because of Stancil's supervisory position at the prison or because he denied Plaintiff's grievance. (Doc. 1, at 9) (stating that "staff" denied his request to access library and Stancil denied his grievance). These

2

are insufficient bases for liability. "'[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability.'" *Keith v. Dekalb Cnty.*, 749 F.3d 1034, 1047 (11th Cir. 2014) (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003)). However, a supervisor may be liable under § 1983 if he or she personally participates in the unconstitutional conduct. *Id.* Alternatively, a supervisor may also be liable if there exists a causal connection "between the supervisor's actions and the alleged constitutional violation." *Id.* at 1048 (citation omitted). Causal connections can be established by widespread abuse that puts a supervisor on notice. *Id.* (citation omitted). But, such abuse "must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Id.* (citation omitted).

Alternatively, a plaintiff may state the necessary causal connection when he alleges "a supervisor's custom or policy . . . result[s] in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Keith*, 749 F.3d at 1048 (alterations in original) (citation omitted). In relation to the latter causal connection, the United States Court of Appeals for the Eleventh Circuit held that a "causal connection can be established if a supervisor has the ability to prevent or stop a known constitutional violation by exercising his supervisory authority and he fails to do so." *AFL-CIO v. City of Miami*, 637 F.3d 1178, 1190 (11th Cir. 2011) (citing *Keating v. City of Miami*, 598 F.3d 753, 765 (11th Cir. 2010)).

The fact that Defendant Stancil denied Plaintiff's grievance, without more, does not show that Defendant Stancil was directly involved in the alleged constitutional violation, nor does it show a sufficient causal connection to establish potential liability. *See Asad v. Crosby*, 158 F. App'x 166, 170-72 (11th Cir. 2005) (affirming district court's dismissal of supervisory liability claims against two defendants who failed, *inter alia*, "to afford [plaintiff] relief during the grievance process[,]" because the record failed to show that the supervisors "personally

3

participated in the alleged constitutional violations, or that there was a causal connection between the supervisory defendants' actions and an alleged constitutional violation"); *see also Smith v. Tifft*, No. 3:12cv171/RV/CJK, 2013 WL 5913796, at *9-10 (N.D. Fla. Oct. 31, 2013) (citations omitted) (finding that prisoner-plaintiff failed to state a claim against prison supervisory official based on the official's supervision of others who recommended denying prisoner-plaintiff's grievances). Thus, the allegations in Plaintiff's original complaint fail to state a claim to the extent Plaintiff seeks to hold Defendant Stancil liable based on Defendant Stancil's supervisory position. Consequently, Plaintiff must recast his complaint if he wishes to continue with this action.

When deciding if he wishes to file a recast complaint and proceed with this action, Plaintiff should be aware that some of the relief he requests is no longer available. After he filed this action, Plaintiff was transferred to a different facility. (Doc. 7). Therefore, his transfer to a different facility moots Plaintiff's request for injunctive and declaratory relief. *Zatler v. Wainwright*, 802 F.2d 397, 399 (11th Cir. 1986) (citations omitted) (without more, "an inmate's claim for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred"); *see also McKinnon v. Talladega Cnty.*, 745 F.2d 1360, 1363 (11th Cir. 1984) (stating that the "general rule is that a prisoner's transfer or release from a jail moots his individual claim for declaratory and injunctive relief[,]" and rejecting plaintiff's argument that the claims for declaratory and injunctive relief should remain available because he might be returned to the same jail at some future date).

If Plaintiff wishes to proceed with this action, he has **ONE** opportunity to recast his complaint. Only **one sole operating complaint** is permissible. Any recast complaint will supersede and take the place of Plaintiff's original complaint and any attached exhibits. *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) (citation omitted) (stating that when an amended complaint is filed, the previously filed complaint becomes "a legal nullity"). The Court will not refer to any previous complaints or exhibits to determine if Plaintiff has stated a claim. Plaintiff may not attach any exhibits, declarations, or other attachments to the recast

complaint.

The recast complaint must be no longer than **TEN (10) PAGES** total (this includes the form and any additional pages that Plaintiff attaches). Plaintiff must write legibly, answer every question on the 42 U.S.C. § 1983 form, and only write on one side of any additional pages he attaches to the standard complaint form. Plaintiff should not include legal arguments or conclusions.

In his recast complaint, Plaintiff must list each Defendant that he wants to sue in the heading. In the body of his complaint or statement of claim section, Plaintiff must again **LIST EACH DEFENDANT BY NAME** and tell the Court exactly how that Defendant allegedly violated Plaintiff's constitutional or federal statutory rights and when. Plaintiff must link the alleged constitutional violation to a named Defendant. Plaintiff must keep in mind, as explained above, that supervisory prison officials are not liable for the unconstitutional act of their subordinates. Thus, if Plaintiff names Defendant Stancil in his recast complaint, he must allege facts sufficient to connect Stancil to his access-to-courts claim. To assist Plaintiff in recasting his complaint, he should answer the following questions:

(1)    Explain exactly what the Defendant did to violate your rights? In other words, did the named Defendant actually deny your request to access the law library or what was his role in the denial?

(2)    When did each Defendant deny you access to the library?

(3)    Exactly how were you injured as a result of this Defendant's actions? As explained above, it is not enough to state that you suffered actual injury. You must provide the case name and number of any qualified action that was affected because a named Defendant denied you access to the law library and explain exactly how the action was negatively impacted.

(4)    What relief do you seek from each Defendant? As explained above, injunctive and declaratory relief are not available.

### MOTION TO PROCEED IFP

Plaintiff also moved to proceed IFP but did not include a certified copy of his prisoner trust fund account statement. (Doc. 2). A prisoner or pretrial detainee seeking leave to proceed without

prepayment of the filing fee must submit (1) an affidavit in support of his claim of indigence and (2) "a certified copy of [his] trust fund account statement (or institutional equivalent) . . . for the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(1)-(2). Thus, Plaintiff must file a certified copy of his prisoner trust fund account statement.

Plaintiff should keep in mind that even if he is allowed to proceed IFP, he is still responsible for the full payment of the $350.00 filing fee. 28 U.S.C. § 1915(b)(1). Money will be automatically deducted from Plaintiff's trust fund account until the $350.00 filing fee is paid in full. Plaintiff will be required to pay the filing fee regardless of whether he is successful with the suit.

In conclusion, if he wishes to proceed with this action, Plaintiff is **ORDERED** to file a recast complaint that complies with the instructions shown above and to submit a proper motion to proceed without the prepayment of the filing fee, which should include a certified copy of his trust fund account statement **WITHIN FOURTEEN (14) DAYS** of the date of this Order. Additionally, Plaintiff is **DIRECTED** to notify the Court in writing of any change of address. If Plaintiff fails to fully and timely comply with this Order, his action will likely be dismissed. The Clerk is **DIRECTED** to forward to Plaintiff a standard §1983 form, the necessary IFP paperwork, and a copy of this Order, all showing Plaintiff's civil action number. There shall be no service of process in this case pending further order of the Court.

**SO ORDERED**, this 10th day of February, 2026.

s/ **ALFREDA L. SHEPPARD**
UNITED STATES MAGISTRATE JUDGE